Slip Op. 15- 41

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NAVNEET PUBLICATIONS (INDIA) LTD., MARISA INTERNATIONAL, SUPER IMPEX, PIONEER STATIONARY PVT. LTD., SGM PAPER PRODUCTS, LODHA OFFSET LIMITED, and MAGIC INTERNATIONAL PVT. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ASSOCIATION OF AMERICAN SCHOOL PAPER SUPPLIERS, <br><br> Defendant-Intervenor. | Before: Richard W. Goldberg, Senior Judge <br> Court No. 13-00204 |

## OPINION

[Sustaining the Department of Commerce's 0.5% all-others antidumping rate on remand.]

Dated: May 4, 2015

*Neil R. Ellis*, *Richard L.A. Weiner*, and *Rajib Pal*, Sidley Austin LLP, of Washington, DC, for plaintiffs.

*Antonia R. Soares*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were *Joyce R. Branda*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director. Of counsel on the brief was *Elika Eftekhari*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

*Alan H. Price*, *Timothy C. Brightbill*, and *Maureen E. Thorson*, Wiley Rein LLP, of Washington, DC, for defendant-intervenor.

Goldberg, Senior Judge: This case comes before the court following remand. In its previous opinion, the court invalidated the 11.01% weighted average dumping margin that the U.S. Department of Commerce ("Commerce" or "the agency") had established for companies that neither failed to cooperate with the agency nor were selected for individual investigation (the "all-others rate" or "rate"). The court gave two reasons: (1) Commerce justified the all-others rate partly on the basis of the low number of individually investigated companies, which was a product of Commerce's own decision-making, and (2) Commerce failed to corroborate the rate with economic reality. *Navneet Publ'ns (India) Ltd. v. United States*, 38 CIT __, __, 999 F. Supp. 2d 1354, 1362–66 (2014). On remand, Commerce provided a new all-others rate together with a reasonable explanation of that rate. The court accordingly sustains Commerce's redetermination.

## BACKGROUND

The court presumes familiarity with its prior opinion, including the explanation of the role of all-others rates, and the statutory guidelines for establishing those rates set forth in 19 U.S.C. § 1673d(c)(5) (2012).[1] The abridged facts that follow will suffice for the sake of this decision.

In 2011, Commerce initiated its fifth administrative review of an antidumping duty order on certain lined paper products from India. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 76 Fed. Reg. 67,133, 67,134 (Dep't Commerce Oct. 31, 2011). The review covered fifty-seven Indian producers and exporters of the subject merchandise. Resp't Selection Mem. at 2–3, PD 61 (Jan. 20, 2012). Commerce determined that it could not individually investigate all fifty-seven companies subject to the review and instead limited its

---

[1] The statutory provisions are called as guidelines because they expressly apply only to investigations, but Commerce nonetheless uses the provisions to inform its analysis in administrative reviews. *Navneet*, 38 CIT at __, 999 F. Supp. 2d at 1358.

review to the two respondents accounting for the largest known volume of subject merchandise. *Id.* at 7–8; *see* 19 U.S.C. § 1677f-1(c)(2). The two individually investigated respondents were Riddhi Enterprises ("Riddhi") and SAB International ("SAB"). Resp't Selection Mem. at 9. In its Final Results, Commerce assigned zero percent individual rates to both Riddhi and SAB. *Certain Lined Paper Products from India*, 78 Fed. Reg. 22,232, 22,234 (Dep't Commerce Apr. 15, 2013) (final admin. review).

For the other fifty-five companies, Commerce assigned one of two rates. Four companies had not cooperated by providing data during the administrative review; as a result, Commerce applied an adverse facts available ("AFA") rate of 22.02%. *Id.* at 22,233–34. The AFA rate matched the highest non-aberrational transaction-specific dumping margin calculated for Riddhi during the review. *Id.*

With respect to companies that were neither uncooperative nor selected for individual investigation, Commerce applied a rate of 11.01%. *Id.* Commerce established the 11.01% rate by simple averaging both individually investigated respondents' zero-percent rates with 22.02% rates from two of the uncooperative companies. *Id.* Commerce chose this method pursuant to 19 U.S.C. § 1673d(c)(5)(B). Under that provision, Commerce chooses "any reasonable method" for establishing all-others rates when, *inter alia*, all individually investigated respondents have been assigned zero-percent rates. *Id.*; *see also* Issues & Decision Mem. ("I&D Mem.") at 13–14, PD 188 (Apr. 9, 2013).[2] According to Commerce, including uncooperative companies' AFA rates in the all-others average was reasonable because, without data from the uncooperative companies,

---

[2] In choosing the method, Commerce forewent both the "reasonable method" expressly contemplated in § 1673d(c)(5)(B) and another "reasonable method" the agency had used in past reviews. The "reasonable method" contemplated by statute is to average individually investigated respondents' rates; the method used in past reviews is to average recently calculated non-zero rates (from either individually investigated respondents or all-others companies, depending on the circumstances). *See* I&D Mem. at 13–14. Commerce explained that it did not use the "reasonable method" from past reviews because all recent non-zero rates had been calculated using the zeroing methodology, which the agency no longer employs. *Id.*

Case 1:13-cv-00204-RWG   Document 77   Filed 05/04/15   Page 4 of 11
Court No. 13-00204                                                                                           Page 4

Commerce could not know whether the individually investigated respondents' zero-percent rates "serve[d] as a proper basis" for establishing the all-others rate. I&D Mem. at 14. Commerce limited the number of AFA rates to two because that was the number of respondents Commerce had determined it could individually investigate. *Id.* As such, had the uncooperative companies cooperated, Commerce might have individually investigated "up to two." *Id.*

Plaintiffs (all of them companies assigned the all-others rate) filed suit at the Court of International Trade on May 15, 2013. Summons, ECF No. 1. Plaintiffs claimed that Commerce's decision to include AFA rates in the all-others average was both contrary to statute and unsupported by substantial evidence.

The court accepted plaintiffs' substantial-evidence claim, and accordingly invalidated the 11.01% all-others rate. *Navneet*, 38 CIT at __, 999 F. Supp. 2d at 1362–66. The court offered two reasons for its holding. First, Commerce's inability to confirm the representativeness of Riddhi's and SAB's zero-percent rates was in part a product of Commerce's own decision to individually investigate only those two companies. *Id.* at 1363. Second, Commerce had failed to "verify that the [11.01% rate] reflects economic reality." *Id.* Commerce never cited any record evidence corroborating the accuracy of the 11.01% rate, and, in fact, record evidence affirmatively undermined that rate. *Id.* at 1363–64.

As to Commerce's failure to square the 11.01% rate with record evidence, the court rejected a belated argument made by the Government during litigation. *Id.* at 1364. The Government had noted that the AFA rate matched Riddhi's highest non-abberational transaction-specific margin, and also argued that the 11.01% was not "far in excess" of Riddhi's or SAB's zero-percent rates. *Id.* at 1364. The court rejected the Government's reasoning as outside the agency record. The court also explained that the AFA rate was "purposely selected with

adversity in mind," and that merely asserting that 11.01% was not "far in excess" of zero percent did not constitute substantial evidence. *Id.*

As to record evidence affirmatively undermining the 11.01% all-others rate, the court highlighted two sets of evidence. First, the all-others rates in the past four reviews stood between one and four percent, and correlated closely with the rates for individually investigated respondents. *Id.* at 1364–65. Second, comparing Riddhi's and SAB's average unit values to those of six all-others respondents suggested that the six respondents should have lower rates. *Id.* at 1365–66. Based on the foregoing, the court remanded for Commerce to reconsider its method of establishing the all-others rate.

On remand, Commerce assigned an all-others rate of 0.5%, the lowest rate above *de minimis*. Final Results of Redetermination Pursuant to Ct. Remand 7, 14, ECF No. 71 ("Remand Results").[3] In order to reach this rate, Commerce made an assumption about the behavior of the uncooperative companies that had been assigned the 22.02% AFA rate: namely, that those companies acted rationally, choosing not to cooperate because that course of action yielded the companies a lower rate than cooperation would. *Id.* at 13–14. Based on this assumption, Commerce inferred that the uncooperative companies' dumping margins were neither zero nor *de minimis* during the period of review. *Id.* Commerce next reasoned that, had the companies cooperated, Commerce might have selected "up to two" as mandatory respondents. *Id.* Had Commerce done so, it would have established an all-others rate above *de minimis*. *Id.*; *see* 19 U.S.C. § 1673d(c)(5)(A). Commerce therefore concluded that a 0.5% all-others rate—above *de minimis*—was reasonable. Finally, to buttress this conclusion, Commerce noted that Riddhi and SAB had non-aberrational transaction-specific margins that were above *de minimis*, including the

---

[3] Under 19 C.F.R. § 351.106(c), Commerce treats review rates below 0.5% as *de minimis*, and declines to levy antidumping duties.

22.02% transaction-specific margin that formed the basis for the AFA rate. Remand Results 7, 14.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction to hear this appeal under 28 U.S.C. § 1581(c). The court will sustain the agency's decisions unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

The court now sustains the Remand Results. The court previously invalidated Commerce's 11.01% all-others rate for two reasons: (1) Commerce justified the rate partly on the basis of the low number of individually investigated companies, which was a product of Commerce's own decision-making, and (2) Commerce failed to corroborate the rate with economic reality. On remand, Commerce remedied both of these defects through a new 0.5% all-others rate supported by substantial evidence.

### I.　Commerce's 0.5% All-Others Rate is Supported by Substantial Evidence

The court holds that Commerce's new all-others rate is supported by substantial evidence, because the agency's new rate remedies both of the defects that justified the court's remand. First, rather than impermissibly relying on the dearth of individually investigated companies to justify the 0.5% rate, Commerce instead based the 0.5% rate on the behavior of the uncooperative companies. Commerce assumed that the companies' failure to cooperate was a rational choice, that is, that the companies would have cooperated if cooperation would yield them a lower rate. Remand Results 13–14. This assumption is supported by precedent from the Federal Circuit, as well as by prior opinions of this court. *See Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1339 (Fed. Cir. 2002) (inferring from respondent's

noncooperation that the "highest [previously calculated] margin reflects the current margin[]" (citing *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1190 (Fed. Cir. 1990))); *Tianjin Mach. Imp. & Exp. Corp. v. United States*, 35 CIT __, __, 752 F. Supp. 2d 1336, 1347 (2011) ("In other words, [*Rhone Poulenc*] stands for the proposition that a respondent can be assumed to make a rational decision to either respond or not respond to Commerce's questionnaires, based on which choice will result in the lower rate."). Commerce next inferred that the uncooperative companies' actual dumping margins were neither zero nor *de minimis*. Remand Results 13–14. And Commerce finally reasoned that, had Commerce selected one or more uncooperative companies for individual investigation, the agency would have established an all-others rate above *de minimis*. *Id.*; *see* 19 U.S.C. § 1673d(c)(5)(A). Therefore, a rate of 0.5%, above *de minimis*, was appropriate. *Id.* These latter steps in Commerce's reasoning, too, are supported by prior opinions of this court. *See Changzhou Hawd Flooring, Co. v. United States*, 39 CIT __, __, Slip Op. 15-07 at 13–16 (Jan. 23, 2015); *Changzhou Wujin Fine Chem. Factory Co. v. United States,* 37 CIT __, __, 942 F. Supp. 2d 1333, 1340 (2013). In sum, Commerce justified the 0.5% rate not by referencing a shortage of individually investigated companies—a course the court invalidated in its prior opinion—but rather by invoking reasoning tested and approved by the courts.

Commerce's 0.5% all-others rate also cures the second defect with the original 11.01% rate, insofar as the new rate comports with economic reality. As Commerce noted, both individually investigated companies had non-aberrational transaction-specific margins above the *de minimis* threshold, thus suggesting "some amount of dumping" during the period of investigation. Remand Results 7, 14. Provided that some dumping occurred during the period of investigation, applying an above *de minimis* all-others rate makes sense. Furthermore, the 0.5%

Court No. 13-00204 Page 8

all-others rate aligns with rates in past reviews, which invariably fell between one and four percent. *Navneet*, 999 F. Supp. 2d at 1364–65.

Defendant-intervenor American Association of School Paper Suppliers ("AASPS") counters that the 0.5% all-others rate cannot reflect economic reality because the uncooperative companies were assigned AFA rates of 22.02%, a far cry from 0.5%. Def.-Intervenor Ass'n of Am. Sch. Paper Suppliers' Cmts. on Final Results of Redetermination Pursuant to Ct. Remand 6–7, ECF No. 68 ("AASPS Comments"). This argument fails because it conflates the economic reality of the uncooperative companies with that of plaintiffs (who were neither uncooperative nor selected for individual investigation). On remand, Commerce was tasked only with ensuring that the all-others rate reflected plaintiffs' reality. *Navneet*, 999 F. Supp. 2d at 1363–64. That the 0.5% all-others rate aligns with all-others rates from past reviews suggests that Commerce fulfilled this task. *See id.* at 1364–65. Besides, the 22.02% AFA rate was "purposely selected with adversity in mind," suggesting that it makes a poor bellwether for the economic reality of even the uncooperative companies. *Id.* at 1364.

In sum, Commerce's 0.5% all others rate is supported by substantial evidence. Rather than relying on an absence of evidence to reach the 0.5% rate, Commerce reasonably inferred an above *de minimis* rate from the behavior of the uncooperative companies. Furthermore, the 0.5% rate comports with plaintiffs' economic reality.

**II. Commerce Was Not Compelled to Adopt AASPS's Proposed 7.34% All-Others Rate**

AASPS proposes a 7.34% all-others rate. AASPS Comments 7–9.[4] AASPS reaches this rate by averaging the zero-percent rates of Riddhi and SAB with the 22.02% AFA rate from one

---

[4] AASPS also reiterates the argument it made prior to remand, that the 11.01% all-others rate was reasonable for the reasons stated by Commerce in the I&D Memo. AASPS Comments 4–6. These reasons have
(footnote continued)

uncooperative company. According to AASPS, this is the most reasonable rate because it is "within the realm of all-others rates calculated in prior reviews," "is based on margins actually calculated in the underlying review," and comports with a "recently assigned . . . preliminary dumping margin of 7.79%." *Id.*

Despite AASPS's proposal, Commerce was not compelled to adopt a 7.34% all-others rate. First, the 7.34% rate is more than five times all but one past all-others rate, and all but two past mandatory respondents' rates. *Navneet*, 38 CIT at __, 999 F. Supp. 2d at 1364–65. Therefore, to the extent that the 7.34% rate can be considered "within the realm" of past all-others rates, the 0.5% rate is still closer. AASPS Comments 7. Second, there is no requirement that Commerce arrive at the all-others rate through an average of rates from the current review. 19 U.S.C. § 1673d(c)(5)(B) instructs Commerce to "establish" (as opposed to "calculate") the all-others rate, and this court has held that "establish" is the broader of the two terms. *Changzhou Hawd Flooring*, 39 CIT at __, Slip Op. 15-07 at 11. If averaging current-review rates leads to a rate that runs counter to economic reality, then assigning a rate close to past all-others rates can be reasonable. All the more so because the court remanded to Commerce following the agency's initial decision to assign an average-based rate, which the agency had calculated using a methodology similar to the one used to calculate the 7.34% rate. *Navneet*, 38 CIT at __, 999 F. Supp. 2d at 1362–66. Third, the 7.34% rate's resemblance to a single preliminary dumping margin (7.79%) is outmatched by the 0.5% rate's similarity to an array of past all-others rates (which do not exceed 3.05%). *Id.* at 1364–65. Finally, even were the 7.34% rate itself reasonable (even the most reasonable), that would not render the 0.5% rate

---

already been rejected by the court. *Navneet*, 999 F. Supp. 2d at 1362–66. Moreover, the fact that another all-others rate might have been reasonable does not indicate that the all-others rate now adopted by Commerce is unreasonable. *See Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

unreasonable: Commerce has discretion to choose between reasonable alternatives, and it did so here. *See Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

### III. Commerce Need Not Adopt Plaintiffs' Proposed Zero-Percent All-Others Rate

Although plaintiffs "conditionally support" Commerce's decision to assign an all-others rate of 0.5%, plaintiffs also propose a zero-percent rate. Cmts. of Non-Selected Resp'ts on Draft Remand Redetermination ("Pls.' Comments") at 3–7, PD 4 (Nov. 17, 2014).[5] According to plaintiffs, the court's opinion prior to remand bore the "strong implication" that the proper all-others rate was zero percent. Pls.' Comments at 3, 6. Plaintiffs further argue that this case is analogous to *Honey from Argentina*, 77 Fed. Reg. 36,253 (Dep't Commerce June 18, 2012) (final admin. review), where the court reached a zero-percent all-others rate by averaging the zero-percent rates of both individually investigated companies. Pls.' Comments at 5–6 (citing 77 Fed. Reg. 36,253 and accompanying I&D Mem. at cmt. 1).[6]

The court disagrees. First, it is Commerce's province, not the court's, to establish the all-others rate. The court's review is limited to ensuring that the rate established by Commerce is a reasonable one. *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351–52 (Fed. Cir. 2006). Put another way, the court may not imply proper or improper rates. And given that the 0.5% all-others rate chosen by Commerce hews closely to past all-others rate, the court cannot

---

[5] In their comments before this court, plaintiffs adopted their comments on the draft remand results. Pls.' Cmts. on Remand Results, ECF No. 69.

[6] Plaintiffs also argue that Commerce assigned a 0.5% all-others rate because the agency labored under the mistaken belief that 19 U.S.C. § 1673d(c)(5) is binding and forbids a zero or *de minimis* rate. Pls.' Comments at 3–6. Plaintiffs cite *Honey from Argentina* as evidence that Commerce is not so bound. But the court does not read Commerce's *Remand Results* to be premised on the assumption that statute forbids a zero or *de minimis* rate, and therefore rejects plaintiffs' argument.

Finally, plaintiffs argue that Commerce should explicitly acknowledge a preliminary injunction issued by this court on October 6, 2014, pertaining to the seventh administrative review. Pls.' Comments at 9 (citing *Navneet Publ'ns (India) Ltd. v. United States* (*Navneet Preliminary Injunction Order*), 38 CIT __, Slip Op. 14-119 (Oct. 6, 2014)). In the injunction order, the court specified that the all-others rate from the fifth review (that is, the rate at issue in this remand) would also be applied in the seventh review. *Navneet Preliminary Injunction Order*, 38 CIT at __, Slip Op. 14-119 at 6. Commerce has thus far complied with the court's October 6 order, and the court expects that the agency will continue to do so.

hold Commerce's choice to be unreasonable. *Navneet*, 38 CIT at __, 999 F. Supp. 2d at 1364–65.

Second, *Honey from Argentina* is meaningfully distinguishable from this case. In *Honey from Argentina*, Commerce assigned a zero-percent all-others rate in part because the individually investigated respondents received *de minimis* rates not only in the immediate review, but also in three previous reviews. 77 Fed. Reg. 36,253 and accompanying I&D Mem. at cmt. 1. In this case, by contrast, the individually investigated respondents never received a *de minimis* rate before the review at issue. *See Navneet*, 38 CIT at __, 999 F. Supp. 2d at 1364–65. There is therefore less evidence suggesting the propriety of a zero-percent all-others rate.

## CONCLUSION

The court originally remanded to Commerce because the agency explained its choice of all-others rate through reference to inadequacies the agency itself had created, and also because Commerce's chosen rate failed to comport with economic reality. On remand, Commerce addressed both concerns. The court sustains the agency's remand redetermination, and judgment will enter accordingly.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: May 4, 2015
New York, New York